THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RONALD WOODWARD,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WEBER COUNTY et al.,<br><br>                    Defendants. | **MEMORANDUM DECISION &<br>ORDER GRANTING DEFENDANTS'<br>SUMMARY-JUDGMENT MOTION**<br><br>Case No. 2:19-CV-897-TS<br><br>District Judge Ted Stewart |

Plaintiff's civil-rights complaint, brought primarily under 42 U.S.C.S. § 1983 (2024), is at issue. (ECF No. 2.) Remaining claims of improper physical treatment under the Federal Constitution and unnecessary rigor under the Utah Constitution stem from an incident in which remaining defendant Jeromy Sampson (a) was using his phone while driving, (b) slammed on the brakes to avoid a rear-end collision in a vehicle in which Plaintiff (a pretrial detainee at the time) was not wearing a seatbelt, and (c) provided only ibuprofen for resulting injuries.[1] (*Id.*)

Defendant Sampson now moves for summary judgment, asserting his affirmative defense of qualified immunity as to federal constitutional claims. (ECF No. 56.) That is, he argues he did not violate Plaintiff's clearly established constitutional rights, (*id.*), "creating a presumption that he is immune from suit," *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (cleaned up). This shifts the burden to Plaintiff to show otherwise. *See Sawyers v. Norton*, 962 F.3d 1270,

---

[1]In his summary-judgment opposition, Plaintiff dropped custom-and-policy claims against Defendants Weber County (WC) and WC Sheriffs Arbon and Thompson. (ECF No. 65, at 2.)

1282 (10th Cir. 2020). Having thoroughly reviewed the parties' arguments and evidence, the Court concludes his qualified-immunity defense shields Sampson from further litigation here.

## A. APPLICABLE LEGAL STANDARDS

### 1. Federal Civil-Rights Claims

Section 1983 is a vehicle for "an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (cleaned up).

The Eighth Amendment safeguards the rights of convicted inmates from deliberate indifference to obvious and substantial risks of serious harm. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). But pretrial detainees, like Plaintiff, have access to that claim under the Fourteenth Amendment. *Id.* (citing *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985)). The same deliberate-indifference standard is applied regardless of which amendment supplies the claim's constitutional basis. *Id.* (citing *Est. of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)).

Plaintiff's § 1983 claims seek damages from Defendant Sampson for violating the Fourteenth Amendment, which secures pretrial detainees from deliberate indifference to serious harm.

### 2. Summary Judgment Review

Summary judgment is apt when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

2

"Once the moving party has identified a lack of a genuine issue of material fact, the

nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for

trial." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (cleaned up). "Those specific facts

must be supported by particular parts of materials in the record; relying on mere pleadings is

insufficient." *Id.* (cleaned up). "Unsubstantiated allegations carry no probative weight in

summary judgment proceedings." *Self*, 439 F.3d at 1230 (cleaned up). "When some contradictory

evidence exists, the basic summary judgment question is whether a reasonable jury could find for

the nonmovant on the disputed issue." *Ortiz v. Torgensen*, 857 F. App'x 419, 421 (10th Cir.

2021) (unpublished).

### 3. Qualified Immunity Review

Qualified immunity means that an official must have fair notice of the law before liability

attaches for violating it. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Two important interests

are balanced by qualified immunity: "the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment, distraction, and

liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231

(2009). Questions of qualified immunity should be resolved at the soonest feasible stage of

litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). Plaintiffs confronting qualified-

immunity challenges do not face a higher-than-normal pleading requirement. *Currier v. Doran*,

242 F.3d 905, 916-17 (10th Cir. 2001).

"The doctrine of qualified immunity shields officers from civil liability so long as their

conduct 'does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per

3

curiam) (quoting *Pearson*, 555 U. S. at 231); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It means to shelter "all but the plainly incompetent or those who knowingly violate the law," *City of Tahlequah*, 142 S. Ct. at 11 (quotation marks and citations omitted), giving """government officials breathing room to make reasonable but mistaken judgments,""" *Martinez v. Jenneiahn*, No. 22-1219, 2023 U.S. App. LEXIS 17609, at *4 (10th Cir. July 12, 2023) (unpublished) (quoting *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011))).

To be clear, when the qualified-immunity defense is raised, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (cleaned up). "A defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong." *Martinez*, 2023 U.S. App. LEXIS 17609, at *5. And, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

Considering qualified immunity at the summary-judgment phase obliges the Court to accept Plaintiff's factual account supported with evidence and ask if that account is sufficient to prevail over the assertion of qualified immunity. *See Helvie v. Jenkins*, 66 F.4th 1227, 1232 (10th Cir. 2023); *Est. of Taylor v. Salt Lake City*, 16 4th 744, 756 (10th Cir. 2021).

## B. UNDISPUTED MATERIAL FACTS FOR THIS ORDER ONLY

The facts below are viewed in a light most favorable to Plaintiff.

**1.** Plaintiff was a pretrial inmate at Weber County Jail (WCJ) on November 25, 2015, when Defendant Sampson loaded Plaintiff and other inmates into a vehicle for transport to a community-service detail. (ECF No. 2, at 3-4; Woodward Decl., ECF No. 65-4, at 2-3.) The vehicle's benches "included individual seat belts for inmate use during the ride from the Jail to the worksite."[2] (Sampson Decl., ECF No. 57, at 2; Adams Decl., ECF No. 58, at 2.)

**2.** Sampson "did not restrain the inmates, including [Plaintiff], with a seatbelt or any other appropriate restraint." (ECF No. 65-4, at 3.) Sampson "did not tell [the inmates] to use the seat belts or do anything to ensure [inmates] were using the seat belts during that transportation."

---

[2] This sentence was part of Defendant's "STATEMENT OF UNDISPUTED MATERIAL FACTS," number seven, set forth in full as follows:

> Sampson frequently used a truck commonly referred to as the "Duck Truck" to transport low-risk inmates to work sites where they would do community service work. The passenger compartment enclosed the bed of the truck and contained two rows of bench seating for the inmates. The benches included individual seat belts for inmate use during the ride from the Jail to the worksite. (Sampson Decl. ¶ 8; Adams Decl. ¶¶ 5-6.)

(ECF No. 56, at 3.)

Plaintiff responded:

> DENY. Plaintiff and another inmate, Mr. Duante Bumpers, both testified they do not recall there being any seat belts in the back and that they never used seatbelts during transport. See Exhibit 2, Deposition of Duante Bumpers, September 29, 2023, 20:22-21:8. See Exhibit 3, Declaration of Ronald Woodward, ¶¶ 8-9.

(ECF No. 65, at 3.)

The support Plaintiff cited for this denial is a snippet of Bumpers' deposition transcript, in which he stated, "I don't know if [seatbelts] were there or not, but it's possible . . . . I know I've never put my seat belt on in [the transport truck], but it could have been there." (Bumpers Dep., ECF No. 69-4, at 6.) And there is a reference to Plaintiff's declaration, in which he said "Defendant Sampson did not restrain the inmates, including myself, with a seatbelt or any other appropriate restraint. Defendant Sampson did not tell us to use the seat belts or do anything to ensure we were using the seat belts during that transportation." (ECF No. 65-4, at 3.)

Thus, Plaintiff does not contest the existence of seatbelts in the truck. Plaintiff asserts only that another inmate does not remember the seat belts. Meanwhile, Plaintiff's declaration did not say that he did not remember seat belts being there, but just that Defendant Sampson did not use the seatbelt for Plaintiff, nor told Plaintiff to use the seatbelt. (*Id.*) But Sampson did remember that there were seatbelts, based on his declaration. (ECF No. 57, at 2.) So, the Court uses the seatbelts' presence in the truck as part of the undisputed material facts for this Order.

(*Id.*) The inmates "were not handcuffed or otherwise restrained and there was nothing restricting them from using the truck's seat belts."[3] (ECF No. 57, at 2.)

**3.** On the drive, another inmate, Duante Bumpers, "could see into the cab of the truck, including seeing Sampson as he was driving, clearly through the window between the trailer and the truck." (Bumpers Dep., ECF Nos. 65-3, at 6; 69-4, at 9, 13.) "Sampson was driving and he was on his phone." (ECF No. 69-4, at 9.)

**4.** As the vehicle approached an intersection, Sampson "slammed on his brakes to make sure he didn't hit the car in front," causing Plaintiff to "topple[]" and "violently hit [Plaintiff's] head," when he "immediately felt head and neck pain." (*Id.*; ECF No. 65-4, at 3.) Other inmates helped Plaintiff back to his seat. (ECF No. 65-4, at 4.)

---

[3]This sentence was part of Defendant's "STATEMENT OF UNDISPUTED MATERIAL FACTS," number nine, set forth in full as follows:

> The trustee inmates were not handcuffed or otherwise restrained and there was nothing restricting them from using the truck's seat belts. Sampson routinely reminded inmates at that time to use seatbelts. However, since the trustee-level inmates are unrestrained and separated from the driver, Sampson had no ability to monitor inmate seat belt usage in the [truck] during the ride from the jail to the worksite. (Sampson Decl. ¶ 9.)

(ECF No. 56, at 3.)
Plaintiff responded:

> DENY. In his deposition Sampson testified that the only conversation he has with inmates about seatbelts is that they are there. See Exhibit 1, Deposition of Jeromy Sampson, April 10, 2023, 38:23-39:25. He also testified that he did not know whether inmates ever used the seat belts, and he never checks to see if inmates use the seat belts. Id., 22:9-13, 38:23-39:6.

(ECF No. 65, at 3.)
Thus, Plaintiff did not deny or contest the specific sentence, "The trustee inmates were not handcuffed or otherwise restrained and there was nothing restricting them from using the truck's seatbelts," (ECF No. 56, at 3 (quoting ECF No. 57, at 2)), which the Court therefore uses as part of the undisputed material facts for this Order.

**5.** "It took multiple attempts by the other inmates in the car banging on the front wall divider to get Defendant Sampson's attention and notify him of the incident and that [Plaintiff] was hurt." (*Id.*; ECF No. 69-4, at 10.)

**6.** Plaintiff told Sampson that he hit his head. (ECF No. 65-2, at 7.) Inmate Bumpers saw Plaintiff's "head was bleeding a little bit." (ECF No. 65-3, at 13.) Sampson asked Plaintiff if he was okay and wanted to move to the truck cab, but Plaintiff "had difficulty responding to Defendant Sampson, due to hitting [his] head and due to the fact that [his] dentures shattered into pieces during the impact." (ECF No. 57, at 4; Sampson Dep., ECF No. 65-2, at 7; ECF No. 65-4, at 4.) Plaintiff said he would continue to the jobsite. (ECF Nos. 65, at 5; 65-4, at 4; 69-3, at 9.)

**7.** Plaintiff was not able to work and did not work at the jobsite that day. (ECF Nos. 65-4, at 4; 69-4, at 10.)

**8.** Upon return to WCJ, Plaintiff "reported worsening headaches, and had some bleeding from [his] ears and nose," for which he "requested medical attention"; he "was only given some Ibuprofen [by Sampson] and sent to [his] cell, where [he] spent then night vomiting due to concussion." (ECF Nos. 57; 65-4, at 4.)

**9.** Sampson's shift ended soon after returning from the worksite on November 25, 2015. (ECF No. 57.)  Before leaving WCJ that day, he recorded the incident in WCJ's system so other WCJ employees workers would be notified. (*Id.*)  The incident report stated,

> Woodward claimed he did a somersault and hit his hand that was bracing the front of the box of the truck. I had Woodward ride infront of the cab with me. He was able to work a full-time on community services. When we returned back to the facility, Woodward requested two ibuprofen for his neck, which I provided him, and he refused medical.

(*Id.* (citing Incident Report, ECF No. 57-2).)

**10.** On November 27, 2015, Plaintiff was released from WCJ. (ECF Nos. 2, at 3-4; 56-2.)

**11.** On November 30, 2015, Plaintiff visited the University of Utah Hospital emergency department. (Hospital Visit Summ., ECF No. 56-6, at 1.) The "Reason for Visit" states, "Head injury--Closed" and

> Pt was in the back of a van last Wed and got thrown into the door when the driver slammed on the brakes. . . . Was not evaluated at the time of the accident, had episode of bloody drainage from ear and nose x 2, reports not thinking clearly, and has new onset numbness and tingling to index finger and toes.

(*Id.*) Provider notes show Plaintiff was "positive for neck pain . . . dizziness, weakness and headaches" and he had "rt handed weakness," together with "[r]ight abduction and extension slightly weaker." (*Id.* at 1-2, 6.) As to Plaintiff's spine MRI done at the hospital, a doctor's report stated, "No findings of an acute cervical spine fracture or ligamentous injury," instead finding "multilevel degenerative and uncovertebral arthropathy result in multilevel foraminal stenosis which is severe C4-C7" and "[n]ondisplaced C4 [or C3] spinous process fracture." (*Id.* at 4, 6, 9.) A "[s]mall posterior scalp hematoma" was noted. (*Id.*) Plaintiff was admitted to the hospital "for further obs and re-eval in the a.m." (*Id.* at 6.) Treatments noted were steroids, "R C6 nerve root block with IR," "C collar for comfort," and diazepam and Percocet prescriptions. (*Id.* at 14-15.) Plaintiff was discharged from the hospital on December 1, 2015. (*Id.* at 14.)

### C. QUALIFIED-IMMUNITY ANALYSIS: CLEARLY ESTABLISHED PRONG

Due to Defendant's assertion of a qualified-immunity defense, Plaintiff is burdened with showing that Defendant Sampson transgressed his clearly established federal constitutional rights. *See City of Tahlequah*, 142 S. Ct. at 11. Here, the Court exercises its discretion to begin its analysis with prong two which is conclusive.

Plaintiff alleges that Defendant Sampson breached his Fourteenth Amendment rights when he (a) had been using his phone while driving, (b) slammed on the brakes to avoid a rear-end collision in a vehicle in which Plaintiff was not handcuffed or shackled and did not use the seatbelt available to him (though he was not told to do so), and (c) provided only ibuprofen for resulting injuries. Even assuming Defendant was deliberately indifferent in violation of the Fourteenth Amendment, Plaintiff has not shown the law was clearly established. Plaintiff thus fails to carry his burden on qualified immunity's second prong.

### 1. Legal Standard

The Court recaps the principles regarding "clearly established law":

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. 731 at 742). Accordingly, the Supreme Court has repeatedly admonished circuit courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Though "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019).
>
> "Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other [circuits] must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted).
> . . . .
> . . . [W]e decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity.

*Ullery v. Bradley*, 949 F.3d 1282, 1291, 1300 (10th Cir. 2020) (other citations omitted); *see also Wesby*, 138 S. Ct. at 590 ("A rule is too general if the unlawfulness of the officer's conduct 'does not immediately follow from the conclusion that [the rule] was firmly established.'" (quoting *Anderson*, 483 U.S. at 641)); *Mullenix*, 577 U.S. at 12 (stating "dispositive question [for qualified immunity] is whether the violative nature of the particular conduct is clearly established" and "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad proposition" (quotations omitted)); *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (stating burden "quite heavy" because "plaintiff must do more than simply allege the violation of a general legal precept [and] . . . must 'instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited'" (ellipses in original) (quoting *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (quoting *Harlow*, 457 U.S. at 818))).

### 2. Plaintiff's Cases

Plaintiff essentially maintains that the law was clearly established, in support of his arguments that his federal constitutional rights were violated when Defendant Sampson (a) had been using his phone while driving, (b) slammed on the brakes to avoid a rear-end collision in a vehicle in which Plaintiff was not handcuffed or shackled and did not use the seatbelt available to him (though he was not told to do so), and (c) provided only ibuprofen for resulting injuries.

To determine whether Plaintiff has met his burden of showing that these rights were "clearly established at the time of the defendant's conduct," *Ullery*, 949 F.3d at 1289, the Court scoured Plaintiff's response to the summary-judgment motion, (ECF No. 65), reviewing each of the cases Plaintiff cited in his apparent attempt to show that his rights were "'sufficiently clear

10

that every reasonable official would have understood that[--Defendant Sampson's (a) use of his phone while driving, (b) sudden application of brakes to avoid a rear-end collision in a vehicle in which Plaintiff was not using the available seatbelt, and (c) provision of only ibuprofen for resulting injuries--]violate[d] th[ose] right[s].'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle*, 566 U.S. at 664); *see also Martinez*, 2023 U.S. App. LEXIS 17609, at 7 ("Mr. Martinez has presented no Supreme Court or Tenth Circuit case where an officer acting under similar circumstances as [the defendants] was held to have violated [the Constitution], [n]or has he shown that the alleged right is clearly established in other circuits." (quotation marks and citations omitted)).

Because they are federal district-court cases ineligible for consideration here, *see Ullery*, 949 F.3d at 1300, the Court rejects Plaintiff's citations and reliance on *Pendleton v. Schroeder*, No. C980791, 1998 U.S. Dist. LEXIS 7790 (N.D. Cal. May 22, 1998), and the leading case cited by Plaintiff, *Kemp v. Webster*, No. 09-CV-295, 2012 U.S. Dist. LEXIS 148438, at *15 (D. Colo. Oct. 16, 2012). (ECF No. 65, at 10-11.) Ignoring that this Court must "decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity," *Ullery*, 949 F.3d at 1300, Plaintiff explicitly says that--as a 2012 district-court case--*Kemp* (and its citing of a host of other cases) put a 2015 defendant, like Sampson, "on notice that [(a)] failing to seatbelt an inmate combined with driving recklessly [and (b) providing only ibuprofen for resulting injuries] is deliberate indifference to a substantial risk of harm." (ECF No. 65, at 11.) Plaintiff's statement does not comport with the law.

And, though Plaintiff hangs his hat on the inapplicable *Kemp*, he then fails to address any of the factual differences between his case and *Kemp*--i.e., in *Kemp*, ice and snow on the road, Kemp's anxiety about the weather and offer to miss his medical appointment so he would not

11

need to be transported, Kemp's constraint by "leg chains, a waste [sic] chain, handcuffs and a 'black box'" (to further immobilize his hands), Kemp's refused request to be belted in, the defendant's erratic driving, the other defendant's chastisement of the driver's poor driving, the crash, and the citing of the driver. *Kemp*, 2012 U.S. Dist. LEXIS 148438, at *2.

Also, Plaintiff solely uses the ineligible district-court-case *Kemp* to support his argument that Defendant Sampson violated Plaintiff's clearly established right to adequate medical treatment. (ECF No. 65, at 12.) The whole "analysis" is a block quote from *Kemp* giving general standards about deliberate indifference to inmates' serious medical needs, followed by four sentences--devoid of citations and analysis--flatly saying that Plaintiff reported a head injury to Sampson; Bumpers said Plaintiff had a bleeding cut on his head; "[a] head injury is sufficiently serious to satisfy the objective component of the test"; and Sampson's "admitted knowledge of the injury is sufficient to satisfy the subjective component." (*Id.* (citing *Kemp*, 2012 U.S. Dist. LEXIS 148438, at *20-21).) Plaintiff's curt treatment of the accepted facts that Sampson heard Plaintiff say that he hit his head, (ECF No. 65-2, at 7), then treated him with just ibuprofen, (ECF Nos. 57; 65-4, at 4), is insufficient to carry his second-prong qualified-immunity burden on summary judgment. This issue is not considered further.

Additionally, as to the alleged reckless driving with no seatbelt, Plaintiff merely lists the cases cited by *Kemp* and offers no insight or analysis as to how any of the cases cited by *Kemp* may lead this Court to see them as clearly established law for purposes of this case. (ECF No. 65, at 11.)  He provides no context or comparison points for any of the *Kemp*-cited cases to suggest how each of them individually put Sampson on notice of the unconstitutionality of his alleged

behavior. The cases cited by *Kemp* and listed by Plaintiff, without any attempt to analogize them to his facts, are as follows:

a. ***Hope v. Pelzer***, 536 U.S. 730 (2002). *Kemp* merely cites *Hope* as being quoted by the Eighth Circuit case, *Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008), not for any factual similarities regarding cases, but as to the basic qualified-immunity principle that "'officials can still be on notice that their conduct violated established law even in novel factual circumstances.'" *Kemp*, 2012 U.S. Dist. LEXIS 148438, at *18 (quoting *Hope*, 536 U.S. at 741). Fatally, Plaintiff's terse citation to *Hope* does not mention or try to analyze the cruel-and-unusual-punishment standard applied to *Hope*'s facts (an inmate twice punished by being handcuffed to a hitching post) vis-à-vis the dissimilar driving incident here, let alone evince an understanding of the standard. (ECF No. 65, at 11.) Plaintiff's fleeting reference to *Hope* therefore does not meet the qualified-immunity criteria for clearly established law.

b. ***Farmer***, 511 U.S. at 828. *Kemp* quoted *Farmer* to support these general and well-established standards governing cruel-and-unusual-punishment-type[4] claims:

> "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. The test for deliberate indifference has both an objective and subjective component. *Id*. at 834. The objective component is met when a plaintiff alleges a deprivation that is "sufficiently serious." *Id*. This has been described as "conditions posing a substantial risk of serious harm," *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006), an "excessive risk to inmate health or safety," *Farmer*, 511 U.S. at 837, and conditions "sure or very likely to cause serious illness and needless suffering," *Helling v. McKinney*, 509 U.S. 25, 33 (1993). The subjective component refers to the defendant's mindset.

---

[4] Again, to assess such Fourteenth Amendment claims, "an analysis identical to that applied in Eighth Amendment cases" is applied. *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) (cleaned up).

> "'[D]eliberate indifference describes a state of mind more
> blameworthy than negligence,' but 'something less than acts or
> omissions for the very purpose of causing harm or with knowledge
> that harm will result.'" *Dexter v. Ford Motor Co.*, 92 Fed. App'x
> 637, 640 (quoting *Farmer*, 511 U.S. at 835) (internal citations
> omitted). A prison official is only liable if "the official knows of
> and disregards an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference could
> be drawn that a substantial risk of serious harm exists, and he must
> also draw the inference." *Farmer*, 511 U.S. at 837.

*Kemp*, 2012 U.S. Dist. LEXIS 148438, at *9-11.

*Farmer* involved the United States Supreme Court's clarification of a consistent test for "deliberate indifference," within the context of housing placement of a preoperative transsexual "vulnerable to sexual attack by [other] inmates," a factual scenario far afield from this one. *Farmer*, 511 U.S. at 831-32. And Plaintiff does not even try to liken it to his facts or claim. Under the Supreme Court precedent in *Mullenix*, 577 U.S. at 12, the Court is not entitled to use these "broad general proposition[s]" from a factually dissimilar case, to reach a conclusion that the "violative nature of particular conduct is clearly established . . . in light of the specific context of the case." *Mullenix*, 577 U.S. at 12 (quotation marks and citations omitted). Plaintiff's bald citation to *Farmer* does not meet his burden of showing Defendant Sampson violated a clearly established right.

**c. *Helling v. McKinney***, 509 U.S. 25, 33 (1993). *Kemp* cites *Helling* for these abstract quotes: (a) "Inmates must be 'furnished with the basic human needs, one of which is reasonable safety,'" and (b) regarding the deliberate-indifference test, the objective component may be met by alleging "conditions 'sure or very likely to cause serious illness and needless suffering.'" *Kemp*, 2012 U.S. Dist. LEXIS 148438, at *9 (quoting *Helling*, 509 U.S. at 33). *Helling*'s facts

14

involve an inmate-plaintiff's exposure to secondhand smoke, a fact situation greatly deviating from unsafe driving conditions. *See Helling*, 509 U.S. at 27.

These relatively broad strokes of law from *Helling* are not in question here. Their applicability is accepted and honored. Neither has Plaintiff done more here than tangentially allege the existence of general legal precepts, when his burden instead was to show "a substantial correspondence between the conduct in question and [how *Helling*] allegedly establish[es] that the defendant[s'] actions were clearly prohibited." *See Watson*, 75 F.3d at 577. Plaintiff's mere citing of this case does not help meet his burden to show the law as to his unconstitutional physical-treatment claim was clearly established.

**d. *Dexter***, 92 F. App'x 637. *Dexter* decided "that failure to seatbelt alone was not enough to rise to the level of an Eighth Amendment violation." *Kemp*, 2012 U.S. Dist. LEXIS 148438, at *11 (citing *Dexter*, 92 F. App'x at 641). "The *Dexter* court clarified that although there were facts suggesting reckless driving, the plaintiff's claims relied solely on failure to seatbelt, and the court was not analyzing failure to seatbelt combined with reckless driving."[5] *Id.* (citing *Dexter*, 92 F. App'x at 640). So this case stands for the proposition that failing to seatbelt is not a constitutional breach--nothing more.

---

[5]This is so even though the defendant-officers in *Dexter* acted contrary to a prison policy requiring seatbelt use. *Dexter*, 92 F. App'x at 641 n.4 ("[V]iolation of an express prison policy requiring seatbelting of inmates cannot provide the basis for establishing an Eighth Amendment violation. *See . . . Davis v. Scherer*, 468 U.S. 183, 194 (1984) ('Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.'). In a related context (due process), the Supreme Court has held that 'the State may choose to require procedures for reasons other than protection against deprivation of substantive rights . . . but in making that choice the State does not create an independent substantive right.' *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) (footnote omitted)." (cleaned up)). This also applies to Plaintiff's argument here about Defendant Sampson's alleged violation of prison policy, which will not be considered further. (ECF No. 65, at 11.)

*Kemp* even conceded this, stating, "Neither the Tenth Circuit nor the Supreme Court has examined whether a failure to seatbelt combined with reckless driving and snowy weather [the fact situation in *Kemp*] constitutes cruel and usual punishment. The closest the Tenth Circuit came was in *Dexter* when the court looked at failure to seatbelt alone." *Kemp*, 2012 U.S. Dist. LEXIS 148438, at *17.

Obviously, Plaintiff's facts present many other distinctions from *Dexter*, in which "the inmates were handcuffed and shackled, [so] they were unable to seatbelt themselves"; inmates asked to be belted in but were not; the defendant driver was distracted by reaching for food; and the driver lost control of and rolled the vehicle, ejecting the plaintiff. *Dexter*, 92 F. App'x at 638. Still, Plaintiff does not carry his burden to address any distinctions or similarities.

Consequently, Plaintiff's citation to *Dexter* does not show clearly established law to support his claims.

   **e. *Brown v. Fortner***, 518 F.3d 552 (8th Cir. 2008). The Court

> need not analyze whether this decision is on-point with the facts alleged in [Plaintiff's] complaint. This is because a single out-of-circuit case does not satisfy the weight of authority approach for demonstrating the law is clearly established. Accordingly, even assuming th[is Eighth] Circuit decision is on-point, [Plaintiff] has not carried his burden on the clearly established prong of the qualified immunity analysis.

*Swanson v. Griffin*, No. 21-2034, 2022 U.S. App. LEXIS 5179, at *12 (10th Cir. Feb. 25, 2022) (unpublished) (citing *Routt v. Howry*, 835 F. App'x 379, 385 (10th Cir. 2020) (unpublished); *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009); *Parkhurst v. Lampert*, 339 F. App'x 855, 861 (10th Cir. July 16, 2009) (unpublished)).

*Brown* is not a Supreme Court or Tenth Circuit case, nor does it alone establish a "weight of authority," so it is ineligible to be used as clearly established law that would have put this defendant in the Tenth Circuit on notice that certain conduct was unconstitutional. *See Toevs*, 685 F.3d at 916.

**f. Discussion**. None of these cases cited by Plaintiff are "'on point'" precedent, in that they are not the product of the right courts, or do not "'involve[] materially similar conduct or appl[y] with obvious clarity to the conduct at issue.'" *Martinez*, 2023 U.S. App. LEXIS 17609, at *5 (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (citations omitted)). The first three of these cases are in the right category--United Supreme Court cases. However, they are of the wrong level of generality. Plaintiff has cited them to support high-level, axiomatic constitutional principles that everyone can agree on. *See Moses-El v. City and Cnty. of Denver*, No. 20-1102, 2022 U.S. App. LEXIS 14847, at *30 n.20 (10th Cir. May 31, 2022) (unpublished) (concluding plaintiff's claims failed on qualified-immunity second prong when plaintiff cited cases "at too high a level of generality" and neither of two cases cited were "factually analogous" to case at bar); *Swanson*, 2022 U.S. App. LEXIS 5179, at *7 ("[P]laintiffs may not identify their claim through '"extremely abstract rights"' because this would '"convert the rule of qualified immunity . . . into a rule of virtually unqualified liability."'" (quoting *White*, 580 U.S. at 79 (quoting *Anderson*, 483 U.S. at 639))); *Frasier v. Evans*, 992 F.3d 1003, 1004 (10th Cir. 2021) ("[T]he precedent must have clearly established the right 'in light of the specific context of the case, not as a broad general proposition.'" (citation omitted)).

Citing *Dexter* is also not helpful to Plaintiff because it held exclusively "that failure to seatbelt an inmate in a passenger van is not even a constitutional violation." *Reyes v. Fowlks*, No.

22-4028, 2023 U.S. App. LEXIS 17606, at *5-6 (10th Cir. July 12, 2023) (unpublished). Reckless driving was not part of the calculation. *Dexter*, 92 F. App'x at 640.

And the last case--*Brown*--is ineligible for consideration because it is an Eighth Circuit case. *See Martinez*, 2023 U.S. App. LEXIS 17609, at *15 ("[T]wo cases from one other circuit are insufficient to clearly establish the law." (citing *Irizarry v. Yehia*, 38 F.4th 1282, 1294-95 (10th Cir. 2022))); *see also Swanson*, 2022 U.S. App. LEXIS 5179, at *7-8 ("[A]lthough Mr. Swanson attempts to rely on out-of-circuit authority to demonstrate that the right he asserts is clearly established under the weight of authority approach, only one of the three out-of-circuit decisions is potentially on-point. But a plaintiff's identification of a single out-of-circuit case is not sufficient to satisfy the weight of authority approach.").

Not one of these cases, explicitly or implicitly, leads this Court to conclude that Plaintiff's Fourteenth Amendment rights were "'sufficiently clear that every reasonable official would have understood that what he is doing violates th[ose] right[s],'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle*, 566 U.S. at 664), when driving distractedly under these circumstances with Plaintiff unbelted. This conclusion takes into consideration that "[t]hough 'a case directly on point' is not required, 'existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate.'" *Ullery*, 949 F.3d 1282, 1291 (quoting *Cummings*, 913 F.3d at 1239); *see also City of Tahlequah*, 124 S. Ct. at 11-12 (parsing and rejecting Tenth Circuit's use of cases with "dramatically different" facts to support Tenth Circuit's conclusion that officers violated clearly established law); *Swanson*, 2022 U.S. App. LEXIS 5179, at *7 (concluding plaintiff did not carry second-prong burden when he "identified some generally

18

applicable rules of law" but no "Supreme Court or Tenth Circuit case addressing a set of facts sufficiently similar").

This is all to say that Plaintiff has not provided authority that leads the Court to find "the law to be as the plaintiff maintains." *Toevs*, 685 F.3d at 916. Plaintiff apparently maintains that the Supreme Court and Tenth Circuit law, as it was when Defendant Sampson drove like he did without Plaintiff belted, then gave Plaintiff only ibuprofen for pain from the resulting bump on the head, put Sampson on notice that Sampson's behavior violated the Federal Constitution. And he had the burden to provide the precedent to support his contention. *See id.* But, as the above list shows, he has not carried that burden.

The qualified-immunity inquiry "may appear unduly formalistic . . . . But this is the task required of [courts] under the qualified-immunity precedents [courts] are obligated to follow." *Ullery*, 949 F.3d at 1301; *see also Lombardo v. City of St. Louis*, 143 S. Ct. 2419, 2421 (2023) (Sotomayor, J., dissenting) ("The 'clearly established' prong of the qualified immunity analysis can pose a very high bar for plaintiffs seeking to vindicate their rights. Even when government officials violate the law, qualified immunity shields them from damages liability unless the 'violative nature of [the] particular conduct is clearly established.'" (quoting *Mullenix*, 577 U.S. at 12)).

In short, after a thorough review of Plaintiff's response to Defendants' summary-judgment motion, (ECF Nos. 56, 65), and based on the undisputed material facts taken in a light most favorable to Plaintiff, the Court concludes that Plaintiff's arguments that Defendant Sampson breached his Fourteenth Amendment rights--by driving distractedly and stopping suddenly causing unbelted Plaintiff to fall and be injured, then giving Plaintiff ibuprofen for his pain--fail

to meet his burden under the second prong of the qualified-immunity analysis to show that Sampson's conduct violated "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah*, 142 S. Ct. at 11 (quoting *Pearson*, 555 U. S. at 231). "A defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong." *Martinez*, 2023 U.S. App. LEXIS 17609, at *5. The Fourteenth Amendment claims against Defendant Sampson are therefore denied.

### 3. Defendant Sampson's Case

Plaintiff did not carry his burden of citing cases showing a lack of clearly established law. Though Defendant had no duty to follow up with caselaw backing his position, Defendant brought to the Court's attention a Tenth Circuit case that clearly bolsters the conclusion that Plaintiff has not met his second-prong qualified-immunity obligation; that case is *Reyes v. Fowlks*, No. 22-4028, 2023 U.S. App. LEXIS 17606 (10th Cir. July 12, 2023) (unpublished), with these relevant facts:

> [O]fficers placed Plaintiff in handcuffs and a belly chain and transported him in the front seat of an off-road patrol vehicle ("OHV"). The OHV had a large sign requiring anyone riding in the vehicle to be securely fastened with a seatbelt and shoulder harness. None of the officers attached either to Plaintiff, although they fastened their own seatbelts and shoulder harnesses. Because of Plaintiff's handcuffs and belly chain, he could not move his hands more than a few inches or fasten his own seatbelt and shoulder harness.
>     Officer Chase Pili drove the OHV in a dangerous manner and drove off the road. He crashed into a fence post and caused serious physical injuries to Plaintiff. None of the officers sustained injuries. Rather than treat Plaintiff's injuries, they continued to process him for driving while impaired.

*Id.* at *2.

Under § 1983, the plaintiff alleged the defendant-officers violated the Fourteenth Amendment when they "failed to provide him constitutionally adequate care during his transport." *Id.* at \*4. Addressing the defendants' qualified-immunity defense, the court centered on the prong-two question of "whether the right was clearly established," concluding, "[I]t is not." *Id.* at \*6. The court said, "[E]ven if we agree with Plaintiff that Defendants' conduct violated the Fourteenth Amendment, Plaintiff can point us to no case law clearly establishing the unconstitutionality of Defendants' conduct at the time it occurred." *Id.* at \*6.

If this 2023 case determined that its fact scenario did not match up with clearly established law, then there for sure was not clearly established law to guide Defendant Sampson's behavior in 2015 about the facts here. *Id.* And *Reyes*'s facts are more egregious than Plaintiff's. Plaintiff Reyes was in handcuffs and a belly chain that kept him from affixing his own seatbelt and shoulder harness and the defendant there actually crashed while driving recklessly, *id.* at \*2. In contrast, Plaintiff here was not handcuffed or shackled and could have belted himself in, and Defendant Sampson did not crash, (ECF Nos. 57, at 2; 69-4, at 9).[6]

---

[6]*Reyes* also addresses another unconvincing argument raised by Plaintiff, which is the issue of Defendant Sampson's alleged violation of traffic laws and how those violations may play into Fourteenth Amendment liability. (ECF No. 65, at 10-11.) The *Reyes* case states,

> Plaintiff argues that the district court erred by failing to recognize Defendants' actions of failing to seatbelt Plaintiff and failing to put Plaintiff's helmet on were a direct violation of the Utah Code. Plaintiff mistakenly attempts to equate a violation of an obligation under state law with a violation of clearly-established federal law. *See Cummings v. Dean*, 913 F.3d 1227, 1243 (10th Cir. 2019) (noting that a defendant may violate clearly-established state law, but that presents an entirely separate question from whether that failure violated clearly-established federal law).

*Reyes*, 2023 U.S. App. LEXIS 17606, at \*6 n.3.

Likewise, here, Plaintiff mistakenly tried to equate violation of state law with violation of clearly established federal law. Such arguments are not valid and so are not further addressed.

### 4. Qualified-Immunity Summary

Plaintiff has not carried his burden under the second prong of his qualified-immunity requirements in that he has not shown clearly established law supports his constitutional claims. *See Patton*, 868 F.3d at 1220; Fed. R. Civ. P. 56(c)(1). "A defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong." *Martinez*, 2023 U.S. App. LEXIS 17609, at *5. Thus, Defendant Sampson is protected by the qualified-immunity doctrine from further litigation in this matter.

### D. UNNECESSARY RIGOR CLAIM

Because Plaintiff's federal claims are now dismissed, he has but one pending claim remaining--under the Utah Constitution's unnecessary rigor clause. *See* Utah Const. art. I, § 9 ("Persons arrested or imprisoned shall not be treated with unnecessary rigor.").

The federal statute governing supplemental jurisdiction reads in pertinent part: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) (2024). This statute also provides the period of limitations for a pendent state law claim is "tolled while the claim is pending [in federal court] and for a period of [at least] 30 days after it is dismissed." *Id.* § 1367(d).

In *Dexter*, when the defendants were determined to be immune from suit on the federal claims, the Tenth Circuit declined to consider the plaintiff's claim under the Utah Constitution's unnecessary rigor clause, explaining,

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not

> insubstantial in a jurisdictional sense, the state claims should be
> dismissed as well.

*Dexter*, 92 F. App'x at 644 (cleaned up).

For these same reasons, this Court declines to take supplemental jurisdiction over Plaintiff's state-law claim for unnecessary rigor here. With all federal claims having been dismissed, this final claim is more properly evaluated by Utah state courts.

## E. CONCLUSION

Defendant Sampson is entitled to his affirmative defense of qualified immunity.

**IT IS THEREFORE ORDERED** that:

**(1)** Defendants' summary-judgment motion is **GRANTED**. (ECF No. 56.)

**(2)** Based on Plaintiff's concession, Defendants Weber County and Sheriffs Arbon and Thompson, and Plaintiff's third cause of action (unconstitutional policies, practices, procedures, customs, and/or training), are **DISMISSED** with prejudice. (ECF Nos. 2, at 9-10; 65, at 2.)

**(3)** Based on qualified immunity, federal constitutional claims against Defendant Sampson are **DISMISSED** with prejudice.

**(4)** Plaintiff's state-law claim is **DISMISSED**. Based on its discretion under 28 U.S.C.S.

§ 1367(c)(3) (2024), the Court declines to extend supplemental jurisdiction over the state-law

claim.

**(5)** No controversy remaining in this Court, this action is **CLOSED**.

DATED this 27th day of March, 2024.

BY THE COURT:

_____
JUDGE TED STEWART
United States District Court

24